**NORTHERN STEVEDORING AND HANDLING CORPORATION,**
Appellee,

v.

**INTERNATIONAL LONGSHOREMEN'S AND WAREHOUSEMEN'S UNION, LOCAL NO. 60,** Appellant.

No. 81–3507.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 4, 1982.

Decided Aug. 26, 1982.

Ronald L. Bliss, Bradbury, Bliss & Riordan, Anchorage, Alaska, for appellant.

Peter J. Maassen, Burr, Pease & Kurtz, Anchorage, Alaska, for appellee.

Before KILKENNY, GOODWIN and POOLE, Circuit Judges.

GOODWIN, Circuit Judge.

Local 60 appeals from a temporary restraining order to enforce an arbitration award. The issues are: (1) whether the appeal is moot; (2) whether the temporary restraining order is an appealable interlocutory order under 28 U.S.C. § 1292(a)(1); (3) whether the district court must follow the procedures in § 7 of the Norris-La Guardia Act, 29 U.S.C. § 107, when it enforces an arbitration award; (4) whether the district court followed these procedures when it issued the temporary restraining order or, alternatively, did Local 60 waive any requirements; and (5) whether the district court erred when it adopted Northern Stevedoring and Handling Corporation's findings of fact and conclusions of law without holding a hearing.

## BACKGROUND FACTS

Local 60 represents the employees of Northern, a stevedoring company in Seward, Alaska. Both the local and Northern

are parties to the 1978–1981 All-Alaska Longshore Agreement. The agreement contains an arbitration clause, a no-strike clause and a picket-line clause. The picket-line clause permits Local 60 to refuse to cross a bona fide picket line of another union.

In August 1981 Local 60 refused to cross a picket line set up by Teamsters Local 959 against Anchorage Cold Storage, a company that had cargo on barges arriving at the dock at Seward. The barges were to be unloaded by Northern's employees onto cars of the Alaska Railroad. The Teamsters were picketing Alaska Railroad as an ally of Anchorage Cold Storage. Local 60 refused to work behind the Teamsters' picket line.

Prior to the arrival of the Anchorage Cold Storage barge on August 21, 1981, Northern obtained a temporary restraining order from the state superior court. On August 25, 1981, Local 60 removed the case to federal district court and moved to dismiss the injunction. A hearing was set on this motion on Wednesday, August 26, 1981. Before this hearing, Northern moved for a temporary restraining order to enforce an arbitration award communicated by telephone. The district court deferred a ruling on Northern's motion until the arbitrator arrived in Seward.

On August 26, 1981, the arbitrator issued an award in favor of Northern. The arbitrator decided that the Teamsters' picket line was not a bona fide picket line within the meaning of the picket-line clause in the agreement.

On August 27, 1981, the district court decided that the state court's temporary restraining order was moot and entered a new temporary restraining order as requested by Northern to enforce the arbitrator's award.

Local 60 filed an emergency motion before this court. After oral argument, this court entered an order staying the temporary restraining order and remanding the case to the district court with instructions to follow the procedures and make findings as required by § 7 of the Norris-La Guardia

Act, 29 U.S.C. § 107. The order stayed the temporary restraining order until the findings were made and returned to this court. The stay was conditioned upon Local 60's posting of a bond.

On September 4, 1981, without holding a hearing, the district court filed its findings of fact and conclusions of law, substantially as drafted by Northern.

On September 4, 1981, a hearing was held on Northern's motion for a bond. Bond was set at $80,000. On appeal this court affirmed the district court's order setting the bond, but granted Local 60's motion for a stay pending an appeal on the merits. This court refused motions by Northern to remand the case to the district court for consideration of a preliminary injunction.

On December 28, 1981, the district court increased the bond by an additional $60,000 after a request for an increase by Northern. This appeal was expedited by a motions panel of this court pursuant to 29 U.S.C. § 110.

In January 1982, the Regional Director of the National Labor Relations Board obtained a preliminary injunction enjoining the Teamsters from picketing at the dock.

## A. Mootness

■ The record reveals that the N.L.R. B.'s requested injunction does not render this case moot. If the N.L.R.B. ultimately finds that the Teamsters' picket line was not an unfair labor practice, and if the dispute between the Teamsters and Anchorage Cold Storage is not settled, then the Teamsters' picket line may go up again. The record suggests a reasonable likelihood that this dispute will recur. *Nebraska Press Assn. v. Stuart,* 427 U.S. 539, 546, 96 S.Ct. 2791, 2796, 49 L.Ed.2d 683 (1976).

Northern's original § 301 complaint requested damages as well as injunctive relief. Local 60 posted a bond in order to cover any damages that Northern might suffer from the work stoppage during the time the union appealed to this court. Any damage claim against Local 60's bond could depend, in part, on the validity of the tem-

porary restraining order. Under these circumstances, "the existence of the bond precludes the case from becoming moot." *Assoc. Gen. C. of M. v. Int. U. of O. E. Loc. 49*, 519 F.2d 269, 271 (8th Cir. 1975), citing *Liner v. Jafco, Inc.*, 375 U.S. 301, 84 S.Ct. 391, 11 L.Ed.2d 347 (1964).

### B. *Appealability*

█ This court can hear appeals from interlocutory orders of the district court which grant, continue, modify, refuse or dissolve injunctions. 28 U.S.C. § 1292(a)(1)[1]. Ordinarily, temporary restraining orders are not considered injunctions for purposes of § 1292(a)(1). *Kimball v. Commandant Twelfth Naval District*, 423 F.2d 88, 89 (9th Cir. 1970).

Local 60 argues that the challenged order should be treated as an injunction because (1) the temporary restraining order effectively decided the merits of the case; (2) the district court had an opportunity to review the law, and (3) the district court does not contemplate further hearings.

When a temporary restraining order decides the merits of a case, the appellate court will not require an appellant to go through additional proceedings for a permanent injunction. *Kimball v. Commandant Twelfth Naval District*, 423 F.2d at 89. In many labor disputes, a temporary restraining order can be as dispositive of the merits as a preliminary injunction. The terminology used to characterize the order does not control whether appeal is permissible under § 1292. 16 Wright and Miller, *Federal Practice and Procedure*, § 3922 (1977).

█ The challenged order in this court could be renewed indefinitely each time an Anchorage Cold Storage barge arrived. The challenged order definitively states that Local 60 cannot honor the Teamsters' picket line. Furthermore, the basic reasons for not allowing appeals from temporary restraining orders do not apply to this case. The district court's order does dispose of the merits of the case.

### C. *Section 301 and the Norris-La Guardia Act*

The fundamental issue in this case is rather narrow. Neither party questions the jurisdiction of the district court to grant an injunction under § 301 in order to enforce an arbitration award. Rather, they disagree about the procedures the district court must follow under § 301 of the Labor Management Relations Act and the Norris-La-Guardia Act before granting injunctive relief to enforce an arbitrator's award.

█ The district court issued an order pursuant to § 301(a)[2] enforcing the arbitrator's award and effectively enjoining Local 60 from honoring the Teamster picket line. Local 60 argues that injunctive relief under Section 301 must adhere to the procedural requirements of § 7 of the Norris-La Guardia Act, 29 U.S.C. § 107.[3] The district

1. 28 U.S.C. § 1292(a)(1) provides:
   (a) The courts of appeals shall have jurisdiction of appeals from:
   (1) Interlocutory orders of the district courts of the United States, the United States District for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court; ..."

2. Section 301(a) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185 provides:
   (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

3. Section 7 of the Norris-La Guardia Act, 29 U.S.C. § 107, states in pertinent part:
   "No court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, as defined in this chapter, except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court, to the effect—

court found, and Northern argues, that the Norris-La Guardia Act does not apply because this dispute is not a "labor dispute" within the meaning of the Act. 29 U.S.C. § 113(c).[4]

The Norris-La Guardia Act, 29 U.S.C. §§ 101 *et seq.*, generally prohibits district courts from granting injunctions in labor disputes. However, § 301 of the Labor Management Relations Act, passed after Norris-La Guardia, authorizes suits to enforce collective bargaining agreements, specifically, no-strike and arbitration clauses. To accommodate the two provisions, the Supreme Court created an additional exception to the Norris-La Guardia Act in *Boys Markets v. Clerks Union*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). This case permits federal courts to enjoin a strike in violation of a no-strike agreement where the dispute is clearly arbitrable.

However, the Supreme Court indicated that courts must follow the requirements of § 7 of the Norris-La Guardia Act:

> " 'A District Court entertaining an action under § 301 may not grant injunctive relief against concerted activity unless and until it decides that the case is one in which an injunction would be appropriate despite the Norris-La Guardia Act. When a strike is sought to be enjoined because it is over a grievance which both parties are contractually bound to arbitrate, the District Court may issue no injunctive order until it first

holds that the contract *does* have that effect; and the employer should be ordered to arbitrate, as a condition of his obtaining an injunction against the strike. Beyond this, the District Court must, of course, consider whether issuance of an injunction would be warranted under ordinary principles of equity—whether breaches are occurring and will continue, or have been threatened and will be committed; whether they have caused or will cause irreparable injury to the employer; and whether the employer will suffer more from the denial of an injunction than will the union from its issuance.' " *Boys Markets v. Clerk's Union*, 398 U.S. at 254, 90 S.Ct. at 1594, *quoting, Sinclair Refining Co. v. Atkinson*, 370 U.S. 195, 228, 82 S.Ct. 1328, 1346, 8 L.Ed.2d 440 (1962) (dissenting opinion).

In *Buffalo Forge Co. v. Steelworkers*, 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976), the Supreme Court indicated that the *Boys Markets* exception to the Norris-La Guardia Act was very narrow. The court held that the district court could not enjoin a sympathy strike because the strike was not an arbitrable grievance:

> "Nor was the injunction authorized solely because it was alleged that the sympathy strike called by the Union violated the express no-strike provision of the contracts. Section 301 of the Act assigns a major role to the courts in en-

(a) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained, but no injunction or temporary restraining order shall be issued on account of any threat or unlawful act excepting against the person or persons, association, or organization making the threat or committing the unlawful act or actually authorizing or ratifying the same after actual knowledge thereof;
(b) That substantial and irreparable injury to complainant's property will follow;
(c) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief;
(d) That complainant has no adequate remedy at law; and

(e) That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection. . . ."

4. Section 13 of the Norris-La Guardia Act, 29 U.S.C. § 113, provides in pertinent part:
   "When used in this chapter, and for the purposes of this chapter—

   .    .    .    .    .

   (c) The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee."

forcing collective-bargaining agreements, but aside from the enforcement of the arbitration provisions of such contracts, within the limits permitted by *Boys Markets*, the Court has never indicated that the courts may enjoin actual or threatened contract violations despite the Norris-La Guardia Act. In the course of enacting the Taft-Hartley Act, Congress rejected the proposal that the Norris-La Guardia Act's prohibition against labor-dispute injunctions be lifted to the extent necessary to make injunctive remedies available in federal courts for the purpose of enforcing collective-bargaining agreements. See *Sinclair Refining Co. v. Atkinson, supra,* [370 U.S.] at 205–208, and 216–224 [82 S.Ct. at 1334–1335, and 1340–1343] (dissenting opinion). The allegation of the complaint that the Union was breaching its obligation not to strike did not in itself warrant an injunction." 428 U.S. at 409, 96 S.Ct. at 3148.

This court has emphasized the need to follow the Norris-La Guardia procedures and follow general principles of equity before issuing an injunction under § 301.

"The events and circumstances leading to the *Boys Markets* decision are by now so familiar as to make a full recitation of them unnecessary. We pause only to repeat that the accommodation reached by the Supreme Court between the anti-injunction provisions of the Norris-La Guardia Act and section 301 of the Labor Management Relations Act is restricted to a closely circumscribed class of cases, and that injunctive relief issued thereby must be conditioned upon a detained set of factual findings...

. . . . .

... each restraint imposed by a *Boys Markets* injunction must be grounded on a finding by the District Court that the activity restrained is a proper subject for injunctive relief despite the Norris-La Guardia Act. If the scope of the injunction is so broad as to enjoin union activity in situations that the court *could not have found* to be suitable for *Boys Markets* relief, because of the paucity of factual support for the necessary findings, the injunction crosses the jurisdictional boundary of the Norris-La Guardia Act. We believe the injunction here crossed that boundary." *Donovan Const. Co. v. Const., P. & M. Lab. U. L. 383,* 533 F.2d 481, 485–6 (9th Cir. 1976).

*Accord: Amalg. Transit Union, Div. 1384 v. Greyhound Lines,* 529 F.2d 1073, 1076–1078 (9th Cir.), *vacated on other grounds,* 429 U.S. 807, 97 S.Ct. 43, 50 L.Ed.2d 68 (1976), *remanded,* 550 F.2d 1237 (9th Cir.), *cert. denied,* 434 U.S. 837, 98 S.Ct. 127, 54 L.Ed.2d 99 (1977).

Northern argues that § 7 of Norris-La Guardia Act does not apply to this case because the underlying dispute is not a "labor dispute" within the meaning of § 13(c) of the Act. 29 U.S.C. § 113(c). The principle case cited by Northern, however, *New Orleans Steamship Ass'n. v. General Longshore Workers,* 389 F.2d 369 (5th Cir. 1968), *cert. denied,* 393 U.S. 828, 89 S.Ct. 92, 21 L.Ed.2d 99 (1968), was decided before *Boys Markets* and later cases which created an exception to the Norris-La Guardia prohibition on injunctions. *Boys Markets v. Clerks Union,* 398 U.S. at 244 n.10, 90 S.Ct. at 1589 n.10, cites *New Orleans Steamship* as an effort to erode the ban on injunctions announced in *Sinclair Refining Co. v. Atkinson,* 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962). *New Orleans Steamship* sought to circumvent this prohibition by "distinguishing an arbitrable award from the process preceding it." *Boys Markets* makes this subterfuge unnecessary.[5]

---

**5.** There is also no merit in Northern's argument that the procedures outlined in § 7 of the Norris-La Guardia Act do not apply here because the court was merely enforcing an arbitration award. That enforcement required the issuance of a temporary restraining order. *Umeko, Inc. v. New York Coat, Suit, Dress, Rainwear, Etc.,* 484 F.Supp. 210, 211 (S.D.N.Y. 1980), clearly states that the procedures of § 7 apply to orders "which prohibit or restrict unilateral coercive conduct of either party in a labor dispute." The district court's order required Local 60 to cross the Teamster picket line. This kind of order is clearly within the purview of § 7.

■ In *Jacksonville Bulk Terminals, Inc. v. ILA*, —— U.S. ——, 102 S.Ct. 2673, 73 L.Ed.2d 327 (1982), the Supreme Court found that the plain language of § 13(c) of the Act covered a politically motivated strike. The Act covers any labor dispute. The critical factor in determining if the Act applies is whether the "employer-employee relationship [is] the matrix of the controversy." *Columbia River Co. v. Hinton*, 315 U.S. 143, 147, 62 S.Ct. 520, 522, 86 L.Ed. 750 (1942), quoted in *Jacksonville Bulk Terminal Inc. v. ILA*, —— U.S. at ——, 102 S.Ct. at 2680. It is evident that the employer-employee relationship is the matrix of this dispute. Northern and Local 60 are the disputants and the dispute involves the interpretation of the collective bargaining agreement. The language of the picketing clause is directly at issue.

■ Northern argues that even if the procedures of § 7 of the Norris-La Guardia Act apply, Local 60 waived these procedures by not requesting to cross-examine Mr. Gale Shingleton on August 26, 1981, the first day of argument. Northern also claims that Mr. Shingleton was not at the hearing on August 27, 1981, because Local 60 refused to cross the picket line. Northern claims that Local 60 created a situation where it maneuvered Shingleton into a position of unavailability.

At the hearing on August 26, Local 60 argued that the telephonic arbitration was invalid. The district court strongly suggested that the parties hold another arbitration hearing. After this hearing and after the union still did not cross the picket line, the district court held another hearing the next day. At that hearing, Local 60 clearly raised the issue of following § 7 procedures. The district court nonetheless issued the temporary restraining order. Local 60 did not waive its right to object to the failure of the district court to follow the appropriate procedures.

■ The district court heard argument, but took no testimony before issuing the temporary restraining order. This court remanded the case to the district court to follow the procedures and make the find-

ings required by the Norris-La Guardia Act. 29 U.S.C. § 107. On remand the district court basically adopted the findings of fact and conclusions of law prepared by Northern. No evidentiary hearing was held. The district court complied with neither this court's order nor with § 7 of the Norris-La Guardia Act.

■ This court has repeatedly cautioned against the practice of adopting one party's proposed findings. *Vuitton et Fils, S. A. v. J. Young Enterprises, Inc.*, 644 F.2d 769, 778 (9th Cir. 1981); *Photo Electronics Corp. v. England*, 581 F.2d 772, 776–77 (9th Cir. 1978). Wholesale adoption of one side's proposed findings of fact and conclusions of law invites reversal. In this case, after this court remanded the case to the district court to hear testimony and enter findings as required by § 7, the court simply had Northern prepare the findings and adopted them almost verbatim. No additional testimony or evidence was taken. It is particularly important in labor disputes that the court not rely on the affidavits of one side only. In this case, the court relied primarily on the affidavit of Northern's general manager.

## CONCLUSION

The challenged order is reversed, and the case is remanded for a hearing, with live witnesses if requested, with the right of cross-examination, and followed by findings as required by § 7 of the Norris-La Guardia Act to determine whether an injunction is appropriate.

Reversed and remanded.