In re DISTRICT NO. 1—PACIFIC COAST DISTRICT, MARINE ENGINEERS' BENEFICIAL ASSOCIATION (AFL–CIO), Petitioner.

TRINIDAD CORPORATION

v.

DISTRICT NO. 1—PACIFIC COAST DISTRICT, MARINE ENGINEERS' BENEFICIAL ASSOCIATION, Appellant,

Crest Tankers Officers' Association.

CREST TANKERS, INC., et al.

v.

DISTRICT NO. 1—PACIFIC COAST DISTRICT, MARINE ENGINEERS' BENEFICIAL ASSOCIATION, Appellant.

Nos. 83–2152 to 83–2154.

United States Court of Appeals, District of Columbia Circuit.

Submitted Nov. 7, 1983.

Decided Nov. 8, 1983.

Opinion Nov. 14, 1983.

Rehearing Denied Dec. 16, 1983.

Angelo V. Arcadipane, Washington, D.C., was on the petition for writ of mandamus and on the brief for appellant.

Peter J. Carre, Washington, D.C., was on the response for appellee/respondent and on the petition for rehearing for appellees.

Anita Barondes and Joseph R. Damato, Washington, D.C., were on the petition for rehearing for appellees.

On Appellant/Petitioner's Petition for Writ of Mandamus and Emergency Motion for Expedition and Reversal

Before WRIGHT, EDWARDS, and GINSBURG,* Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

This appeal arises from an order of the District Court issued at 6:00 p.m. on Friday, November 4, 1983, enjoining appellant, a labor organization, from pursuing a private arbitration scheduled to be held in New York City on November 9 and 10, 1983. On Monday morning, November 7, 1983, appellant filed an emergency motion with this court seeking immediate reversal of the District Court's order. We vacated the District Court's order the next day so as to allow arbitration to proceed as scheduled. In this opinion, we set forth our reasoning.

## I. BACKGROUND

The litigation in District Court originated with a complaint filed by Trinidad Corporation ("Trinidad") on November 1, 1983. Trinidad, a private corporation engaged in the ownership and operation of United States flag vessels, named District No. 1—Pacific Coast District, Marine Engineers' Beneficial Association ("MEBA") as one of

---

* Judge Ginsburg did not participate in the disposition of this matter.

two defendants.[1] The complaint sought declaratory and injunctive relief to prohibit MEBA from pursuing an arbitration between Trinidad and MEBA that was scheduled to take place in New York City on November 9 and 10. The grievance matter that was the subject of arbitration concerned MEBA's claim that two other private employers were actually "subsidiaries" or "affiliates" of Trinidad so that the work of these employers should be governed by the Trinidad-MEBA collective bargaining agreement. The second defendant named in Trinidad's complaint was the Crest Tankers Officers' Association ("CTOA"), a labor organization allegedly representing the licensed marine engineers employed by one of the other private employers. No immediate relief was sought against CTOA.

On November 3, the District Court held a hearing regarding Trinidad's complaint. After hearing oral presentations by counsel for both parties, the District Court ordered counsel to return to court the next day for additional argument. On November 4, prior to the resumption of argument, Crest Tankers, Inc. ("Crest") and Clayton Tankers, Inc. ("Clayton") filed a complaint with the District Court that named MEBA as the sole defendant. Crest and Clayton, the private employers claimed by MEBA to be subsidiaries or affiliates of Trinidad within the meaning of the Trinidad-MEBA collective bargaining agreement, sought declaratory, injunctive and monetary relief against MEBA. The most immediate relief sought by the Crest/Clayton complaint was issuance of an order enjoining MEBA from pursuing arbitration with Trinidad the following week.

On November 4, the District Court consolidated the Trinidad and Crest/Clayton actions. The court then heard further arguments from counsel. In addition, the court had before it extensive legal memoranda submitted by counsel for Trinidad and Crest/Clayton in support of injunctive and declaratory relief, as well as MEBA's written oppositions. At 6:00 p.m. on November 4, the court issued an order labelled "temporary restraining order," prohibiting MEBA from pursuing arbitration. The order was to remain in effect for ten days until November 14, at which time further hearings would be held.

On Monday morning, November 7, MEBA filed an emergency motion with this court, seeking to overturn the order of the District Court so as to allow the arbitration to go forward as scheduled. MEBA's motion requested that this court reverse the District Court's order or, in the alternative, issue a writ of mandamus compelling the District Court to rescind its order. On November 8, this court issued an order vacating the action of the District Court. We write now to explain our decision.

## II. DISCUSSION

### A.

The initial question to be considered is whether the Court of Appeals has jurisdiction to review the November 4 order of the District Court. The District Court characterized its action as a "temporary restraining order." We find this characterization to be patently erroneous. Despite the label, the November 4 order of the District Court effectively amounted to a preliminary injunction, and we have treated the order as such. *See Adams v. Vance,* 570 F.2d 950, 953 (D.C.Cir.1977) (District Court's characterization of its order as a temporary restraining order does not preclude Court of Appeals from treating it as a preliminary injunction). Because proper characterization of the order affects not only our appellate jurisdiction, but also our review of the District Court's compliance with the procedural and substantive provisions of the Norris-LaGuardia Act, 29 U.S.C. §§ 101–115,[2] we briefly set forth the

---

1. MEBA is a labor organization representing licensed marine engineers employed by Trinidad.

2. There is no doubt whatever that the instant action involves or grows out of a "labor dispute" as that term is used under the Norris-LaGuardia Act, 29 U.S.C. §§ 101, 113. Although there is no specific language in section 4, 29

rationale underlying our finding on this point.

■ In some cases, it is truly difficult to discern whether the equitable relief at issue is a temporary restraining order or a preliminary injunction. However, we do not find this to be a difficult case; in no legitimate sense is it possible to view the District Court's November 4 action as a temporary restraining order. There are several reasons to support this conclusion. First, the order was to remain in effect for ten days, despite the fact that section 7 of the Norris-LaGuardia Act, 29 U.S.C. § 107, provides a maximum duration of five days for temporary restraining orders. Where a purported temporary restraining order extends for a longer than permissible duration, there is a sound basis for treating it as a preliminary injunction. *See Sampson v. Murray,* 415 U.S. 61, 86, 94 S.Ct. 937, 951, 39 L.Ed.2d 166 (1974) (citing *National Mediation Board v. Air Line Pilots Association,* 323 F.2d 305

(D.C.Cir.1963)).[3] Second, the District Court's order was entered after the court heard two days of oral arguments and had before it the parties' extensive written submissions concerning the applicable law. This likewise suggests that the District Court's order was in the nature of a preliminary injunction. *See Sampson v. Murray,* 415 U.S. at 87, 94 S.Ct. at 951; *San Francisco Real Estate Investors v. Real Estate Investment Trust of America,* 692 F.2d 814, 816 (1st Cir.1982).

Finally, it must be recognized that the District Court's preemptive action was taken in the face of the firm policy underlying the Norris-LaGuardia Act (*i.e.,* of limiting federal court intervention in private labor disputes),[4] and the equally strong policy in favor of private labor arbitration free from government interference, *see, e.g., Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 455, 458–59, 77 S.Ct. 923, 917, 918–19, 1 L.Ed.2d 972 (1957). As a consequence, the court's action in blocking the scheduled ar-

U.S.C. § 104, dealing with injunctions *against* arbitration, this in no way nullifies our finding that the action here is a "labor dispute" within the compass of the Norris-LaGuardia Act. Furthermore, the terms of section 8, 29 U.S.C. § 108, surely support this conclusion. Since it is not otherwise excluded pursuant to existing case law, *see* section C. *infra,* an injunction to block an arbitration under a collective bargaining agreement is fully subject to the strictures of the Norris-LaGuardia Act.

3. In *Sampson,* the Court noted that requiring rigid adherence to the durational limits prescribed in Fed.R.Civ.P. 65(b) for temporary restraining orders "comports with general principles imposing strict limitations on the scope of temporary restraining orders." 415 U.S. at 86, 94 S.Ct. at 951. Because the requirements of the Norris-LaGuardia Act regarding labor injunctions go beyond the standards generally governing injunctive relief, there is even more reason here to insist upon strict procedural compliance.

4. In 1932, at the time of the passage of the Norris-LaGuardia Act, there was "widespread feeling that the labor injunction was impairing public confidence in the judicial system. In addition, the point was made that the weight of the law was being thrown into labor disputes on one side, and that the injunctions were not making any contribution to the solution of the industrial relations problems which had caused the disputes." R. Smith, L. Merrifield & T. St.

Antoine, Labor Relations Law 27 (1979). In assessing the importance of the Act, Professor Archibald Cox has written:

The Norris-LaGuardia Act had practical economic origins. It was enacted at the bottom of the Great Depression. Employees were weak, ill-paid, and working under deplorable conditions. Its sponsors believed that the workers' bargaining power could be enhanced and their earnings and working conditions improved by concerted action. Labor injunctions were obstacles; therefore they deprived the courts of power to issue injunctions.

Perhaps these economic forces were alone sufficient to carry the day, but the Norris-LaGuardia Act also rested upon closely reasoned theory. The central proposition was that law served no useful purpose in labor disputes, save possibly to protect tangible property and preserve public order. Its philosophical underpinning was the belief that the government should not resolve labor disputes or substitute its wage or price determinations for private contracts in a free market. Union organization, strikes, boycotts, and picketing were held to be part of the competitive struggle for life, which society tolerates because the freedom is worth more than it costs.... The Norris-LaGuardia Act introduced the only period of unqualified laissez faire in labor relations.

A. Cox, Law and The National Labor Policy 5, 8 (1960).

bitration produced profoundly important negative effects, far in excess of those that normally flow from the issuance of a temporary restraining order. Simply stated, the action of the District Court was almost wholly inconsistent with well-established law regulating collective bargaining, the enforcement of collective bargaining agreements, and relations between the judiciary and labor arbitrators in the private sector.

### B.

On the basis of the foregoing considerations, we think that there can be little doubt over the conclusion that the November 4 order of the District Court amounted to a preliminary injunction, and, as such, was immediately appealable.[5] Given this finding, it is absolutely clear that the procedures followed by the District Court failed to comply with the requirements of the Norris-LaGuardia Act.[6] No sworn testimony was heard, even though such testimony is required by section 7 of the Act, 29 U.S.C. § 107. No findings of fact were made, in contravention of sections 7 and 9 of the Act, 29 U.S.C. §§ 107, 109.[7] Strict adherence to the Act's proce-

**5.** *See* 29 U.S.C. § 110 ("the appeal shall be heard and the temporary injunctive order affirmed, modified, or set aside with the greatest possible expedition, giving the proceedings precedence over all other matters except older matters of the same character"). *See also* 28 U.S.C. § 1292(a)(1) (allowing for "appeals from . . . [i]nterlocutory orders of the district courts . . . granting . . . or refusing to dissolve or modify injunctions").

*See also* note 8 *infra*.

**6.** It might be argued that it is unfair to judge the adequacy of the procedures followed by the District Court under the Act's provisions governing preliminary injunctions, in light of the fact that the District Court believed it was merely issuing a temporary restraining order. In this regard, however, we note that the proceedings were insufficient to support even the issuance of a temporary restraining order. *See* 29 U.S.C. § 107 ("a temporary restraining order may be issued upon testimony under oath, sufficient, if sustained, to justify the court in issuing a temporary injunction upon a hearing after notice"); *Northern Stevedoring and Handling Corp. v. International Longshoremen's and Warehousemen's Union, Local No. 60,* 685 F.2d 344, 350 (9th Cir.1982).

**7.** Section 7 of the Norris-LaGuardia Act states, in pertinent part, that:

No court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, as defined in this chapter, except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court, to the effect—

(a) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained, but no injunction or temporary restraining order shall be issued on account of any threat or unlawful act excepting against the person or persons, association, or organization making the threat or committing the unlawful act or actually authorizing or ratifying the same after actual knowledge thereof;

(b) That substantial and irreparable injury to complainant's property will follow;

(c) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief;

(d) That complainant has no adequate remedy at law; and

(e) That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection.

Such hearing shall be held after due and personal notice thereof has been given, in such manner as the court shall direct, to all known persons against whom relief is sought, and also to the chief of those public officials of the county and city within which the unlawful acts have been threatened or committed charged with the duty to protect complainant's property: *Provided, however,* That if a complainant shall also allege that, unless a temporary restraining order shall be issued without notice, a substantial and irreparable injury to complainant's property will be unavoidable, such a temporary restraining order may be issued upon testimony under oath, sufficient, if sustained, to justify the court in issuing a temporary injunction upon a hearing after notice. . . .

It is particularly important to note that "Section 7 imposes more rigid restrictions upon the issuance of labor injunctions than the mere absence of an adequate remedy at law." C. Morris, The Developing Labor Law 22 (1983). In addition, this court long ago held that where a suit involves a labor dispute, an injunction cannot be granted except to restrain "unlawful acts" and then only in strict conformity with

dures is not a mere matter of form: A district court has no *jurisdiction* under the Norris-LaGuardia Act to issue a labor injunction without adhering to the explicit terms of the Act. *See* 29 U.S.C. § 101. We cannot countenance any deviation from the Act. We therefore find that the District Court was without jurisdiction when it acted on November 4.[8]

### C.

Even if the District Court arguably had jurisdiction to act as it did on November 4, we would still set aside the action as a clear abuse of discretion. As noted above, the Norris-LaGuardia Act establishes a strong federal policy against the issuance of labor injunctions, except in very narrowly prescribed circumstances. *Compare Boys Markets, Inc. v. Retail Clerks Union, Local 770,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), *with Buffalo Forge Co. v. United Steelworkers,* 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976). Furthermore, the Supreme Court has made it plain that, in those limited circumstances when injunctive relief is warranted under the Norris-LaGuardia Act, it should be given to enforce—not impede—private labor arbitration. *See, e.g., Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct.

923, 1 L.Ed.2d 972 (1957);[9] *Boys Markets, Inc. v. Retail Clerks Union, Local 770,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970); *Jacksonville Bulk Terminals, Inc. v. International Longshoremen's Association,* 457 U.S. 702, 102 S.Ct. 2673, 73 L.Ed.2d 327 (1982).

The strong federal policy in favor of labor arbitration requires a court to enforce the parties' agreement to arbitrate even when the court may view the grievance as unmeritorious, *see, e.g., United Steelworkers v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), and even when the subject of a grievance is arguably excluded from the contractual arbitration clause, *see, e.g., United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). In other words, there is a strong presumption of arbitrability where the parties have negotiated a grievance-arbitration procedure, absent compelling evidence that the parties intended to exclude the subject matter from arbitration. In this case, appellees did not even claim that the underlying dispute was not arbitrable under the parties' agreement. And, it appears here that appellants have more than a colorable claim of arbitrability,

---

the provisions of the Norris-LaGuardia Act. *Green v. Obergfell,* 121 F.2d 46 (D.C.Cir.1941).

**8.** Our conclusion that this court has appellate jurisdiction to review what amounts to a preliminary injunction renders the writ of mandamus requested by MEBA an inappropriate remedy. *See Helstoski v. Meanor,* 442 U.S. 500, 505–06, 99 S.Ct. 2445, 2447–48, 61 L.Ed.2d 30 (1979). If, however, the action could somehow be properly labelled a temporary restraining order and an appeal did not lie, MEBA would be entitled to issuance of the writ. One of the traditional uses of mandamus has been "to confine [a district court] to a lawful exercise of its prescribed jurisdiction. . . ." *Roche v. Evaporated Milk Ass'n,* 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943), *quoted in, Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 35, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980) (per curiam). Strict compliance with the Norris-LaGuardia Act's provisions is a jurisdictional prerequisite to the issuance of temporary restraining orders concerning labor disputes. 29 U.S.C. § 101. The District Court's failure to comply with the provisions regarding issuance

of temporary restraining orders, *id.* §§ 107, 108, thus stripped it of jurisdiction and would render mandamus an appropriate remedy were not an appeal also available. *See, e.g., Truck Drivers Local Union No. 807 v. Bohack Corp.,* 541 F.2d 312, 317 (2d Cir.1976), *cert. denied,* 439 U.S. 825, 99 S.Ct. 95, 58 L.Ed.2d 117 (1978).

**9.** One prominent labor law scholar has properly summarized *Lincoln Mills* as follows:

[T]he Supreme Court held that an employer which had wrongfully violated its promise to submit to grievance arbitration could be ordered to do so and that such an injunction would not violate the Norris-LaGuardia Act, either section 4 (whose listed protected activities, such as assembling and patrolling, did not include the failure to arbitrate) or section 7 (whose injunction prerequisites, such as irreparable injury to property, inadequate remedy at law and inability of public officers to furnish protection, were simply declared by the Court to be "inapposite").

R. Gorman, Basic Text on Labor Law 606 (1976).

*i.e.,* surely enough to avoid an injunction *blocking* arbitration. The least that *Lincoln Mills, American Manufacturing* and *Warrior & Gulf* require is that the parties to a collective bargaining agreement be allowed—indeed, required—to use their contractual grievance-arbitration procedure without intervention by a court.

### D.

The appellees argue that the action of the District Court was necessary in order to avoid irreparable harm. According to the appellees, irreparable harm will result (1) if the employer is forced to defend against appellant's claims in arbitration, and (2) if the employer is exposed to the possibility of inconsistent bilateral arbitration awards. We find these arguments to be specious.

It can hardly be claimed that the cost of complying with the terms of an agreed-upon arbitration procedure is irreparable harm. In light of established federal labor policy, the appellees' contention on this point defies comprehension. Indeed, it has been routinely held that even general litigation expenses do not constitute irreparable harm. *See, e.g., Renegotiation Board v. Bannercraft Clothing Co.,* 415 U.S. 1, 24, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123 (1974) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury.").

Furthermore, and more importantly, the Norris-LaGuardia Act itself specifically states that "[n]o restraining order or injunctive relief shall be granted to any complainant who has failed to . . . make every reasonable effort to settle such dispute by . . . voluntary arbitration." 29 U.S.C. § 108. It is anomalous that the District Court here issued an injunction *against* arbitration in the light of this statutory mandate.

As for appellees' second argument, concerning the possibility of facing inconsistent arbitration awards, we find this contention to be squarely foreclosed by the Supreme Court decision in *Carey v. Westinghouse Electric Corp.,* 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964). In *Carey,* the International Union of Electrical Workers (IUE) was the certified bargaining representative of "all production and maintenance employees" at the plant where the controversy arose; "salaried technical" employees were specifically excluded. IUE and Westinghouse were parties to an agreement which provided for arbitration of unresolved disputes, including those involving the "interpretation, application or claimed violation" of the parties' agreement. IUE filed a grievance asserting that certain employees represented by Westinghouse Independent Salaried Unions (Federation) were performing production and maintenance work. Federation represented a bargaining unit of "all salaried technical" employees; from this unit "all production and maintenance employees" were excluded. Westinghouse refused to arbitrate, claiming the controversy concerned a representation matter within the exclusive jurisdiction of the National Labor Relations Board, although the Board's jurisdiction had not been invoked. IUE petitioned the Supreme Court of New York for an order compelling arbitration, but such order was refused on the ground urged by Westinghouse. This decision was affirmed on appeal through the New York appellate courts. The United States Supreme Court reversed and held that the dispute should go to arbitration. The Court held that, whether the dispute was jurisdictional or representational in nature, the availability of recourse to the NLRB did not preclude contract arbitration. *Id.* at 268, 84 S.Ct. at 407. A second issue in the case arose out of the fact that "only one of the two unions involved in the controversy [had] moved the state courts to compel arbitration." *Id.* at 265, 84 S.Ct. at 406. Therefore, as the Court further stated, "unless the other union intervenes, an adjudication of the arbiter might not put an end to the dispute." *Id.* The Supreme Court did not regard this fact as an obstacle to proceeding with the arbitration because it found that "resort to arbitration may have a pervasive, curative effect . . . ." *Id.* at 272, 84 S.Ct. at 409.

If the Supreme Court in *Carey* was willing to *compel* arbitration even though one of the contesting unions might not be a party before the arbitrator, it was an abuse of discretion for the District Court to *enjoin* an arbitration merely because of the presence of such a risk.

 Finally, in the unlikely event that the arbitrator, William J. Usery (who is a former Secretary of Labor and well-known expert in collective bargaining), should exceed his authority under the collective bargaining agreement, or otherwise render an unlawful or unenforceable award, there is nothing to prevent an aggrieved party from challenging the arbitrator's decision. *See, e.g., United Steelworkers v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Even under *Enterprise Wheel,* however, the Supreme Court has made it clear that an arbitrator's contractual interpretation must be upheld "so long as it draws its essence from the collective bargaining agreement." *Id.* at 597, 80 S.Ct. at 1361. The Court's rationale for this limited review is equally clear:

> Respondent's major argument seems to be that by applying correct principles of law to the interpretation of the collective bargaining agreement it can be determined that the agreement did not so provide, and that therefore the arbitrator's decision was not based upon the contract. The acceptance of this view would require courts, even under the standard arbitration clause, to review the merits of every construction of the contract. This plenary review by a court of the merits would make meaningless the provisions that the arbitrator's decision is final, for in reality it would almost never be final. This underlines the fundamental error which we have alluded to in *United Steelworkers of America v. American Manufacturing Co., ante* [363 U.S.], p. 564 [80 S.Ct. 1343, 4 L.Ed.2d 1403], decided this day. As we there emphasized, the question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

*Id.* at 598–99, 80 S.Ct. at 1361–62.

### III. CONCLUSION

For the foregoing reasons, the motion to set aside the November 4 order of the District Court is hereby granted. The order amounted to a preliminary injunction and the District Court was without jurisdiction to grant such relief under the Norris-LaGuardia Act. Furthermore, even assuming that the District Court possessed jurisdiction, we find the challenged action to be an abuse of discretion.

The case is hereby remanded to the District Court for such action as may be appropriate consistent with this opinion. If appellees' complaint raises some legitimate question of federal law, over which the District Court has jurisdiction, then the matter may be pursued; otherwise, the complaint should be dismissed.

*So ordered.*

### On Petition For Rehearing

Appellees have filed a petition for rehearing of our decision overturning, on the basis of the Norris-LaGuardia Act, 29 U.S.C. §§ 101–115, a district court injunction against labor arbitration. We have reviewed the petition with care and find it in all respects unmeritorious. In rejecting the petition for rehearing, we write briefly to elaborate on a point made in footnote 2 of the original panel opinion.

 Normally, in considering the applicability of the Norris-LaGuardia Act, courts are required to determine whether a case falls within the compass of § 4, 29 U.S.C. § 104, of the Act. *See, e.g., Jacksonville Bulk Terminals, Inc. v. International Longshoremen's Association,* 457 U.S. 702, 708, 102 S.Ct. 2673, 2678, 73 L.Ed.2d 327 (1982). Section 4 enumerates certain specific acts (such as "[c]easing or refusing to perform any work," 29 U.S.C. § 104(a))

that are not subject to restraining orders or injunctions. It does not follow from this, however, that a district court has jurisdiction to issue a restraining order or injunction in any case "involving or growing out of a labor dispute" whenever the act sought to be enjoined is not listed in § 4. *See Marine Cooks & Stewards v. Panama Steamship Co.,* 362 U.S. 365, 366 n. 2, 80 S.Ct. 779, 781 n. 2, 4 L.Ed.2d 797 (1960) (suggesting that even when an injunction is not prohibited by § 4, "other sections of the Act narrowly circumscribe the cases where, the parties against whom, and the circumstances in which, injunctions may issue").

 Indeed, the principal jurisdictional provision of the Norris-LaGuardia Act belies any contention that an injunction may issue whenever the matter sought to be enjoined is not listed in § 4. Section 1 of the Act reads as follows:

No court of the United States, as defined in this chapter, shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in strict conformity with the provisions of this chapter; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter.

29 U.S.C. § 101. It is noteworthy that the language of § 1 denies jurisdiction to the district court to issue "*any* restraining order or ... injunction" in *any* case "involving or growing out of a labor dispute," except "in strict conformity with the provisions of [the Act]." Section 8, which is one of "the provisions of [the Act]" to which § 1 refers, plainly states that

[n]o *restraining order* or *injunctive relief* shall be granted to *any complainant* who has ... failed to make every reasonable effort to settle such dispute ... [through] voluntary arbitration.

29 U.S.C. § 108 (emphasis added). Neither § 1 nor § 8 is in any way modified by § 4. *See, e.g., Brotherhood of Railroad Trainmen, Enterprise Lodge, No. 27 v. Toledo, Peoria & Western Railroad,* 321 U.S. 50, 64

S.Ct. 413, 88 L.Ed. 534 (1943) (holding, without even mentioning § 4, that an employer who refuses to submit a dispute to arbitration has not made "every reasonable effort" to settle the dispute, within the meaning of § 8 of the Norris-LaGuardia Act, and is therefore barred from injunctive relief in the federal courts). The obvious conclusion to be drawn is that a district court has no jurisdiction to issue a restraining order or injunction in any case arising out of a labor dispute where the complainant has failed to make every reasonable effort to settle such dispute by arbitration. This conclusion is dispositive of the case at hand.

Appellees argue that because injunctions against arbitration are not listed in § 4, the action of the district court should have been allowed to stand. Apart from our finding that the district court had no jurisdiction to act as it did, we would add that it is hardly surprising that *injunctions against arbitration* are not listed in § 4. Section 8 positively requires the use of arbitration; therefore, there was no reason for Congress to cross-reference this requirement in § 4.

 We also note that, in their petition for rehearing, appellees have completely ignored the language of § 1 which states that no restraining order or injunction may be issued "contrary to the public policy declared in this [Act]." 29 U.S.C. § 101. One of the clearest policies of the Norris-LaGuardia Act is that no restraining order or injunctive relief shall be granted to any complainant who seeks to avoid a contractual obligation to submit a grievance to voluntary arbitration. 29 U.S.C. § 108. This was made plain in *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), where the Supreme Court stated that "[s]ection 8 of the Norris-LaGuardia Act ... indicate[s] a congressional policy toward settlement of labor disputes by arbitration, for it *denies injunctive relief* to any person who has failed to make 'every reasonable effort' to settle the dispute by negotiation, mediation, or 'voluntary arbitration.'" *Id.* at 458, 77 S.Ct. at 918 (emphasis added).

It would be utterly ironic and ridiculous for us to hold, in the face of the explicit jurisdictional and public policy provisions of § 1, the specific requirement in § 8 compelling resort to arbitration as a prerequisite to any injunctive relief, and the undisputed fact that this case arises out of a labor dispute, that an injunction should nevertheless issue because injunctions against arbitration are not listed in § 4. Such a conclusion would effectively destroy substantial and important provisions of the Norris-La-Guardia Act.

When stripped to its core, the appellees' petition for rehearing is nothing more than an attempt to enmesh the federal courts in private grievance disputes whenever it is claimed that an arbitrator *might* issue an unpalatable or unenforceable award. For us to take such a course would be to invite a flood of litigation seeking to block arbitration in advance of its occurrence. Such a result would run directly counter to the teachings of the Supreme Court in an unbroken line of cases establishing private labor arbitration as the preferred means of resolving contractual disputes. *See Textile Workers Union v. Lincoln Mills, supra; United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960) ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."); *United Steelworkers v. American Manufacturing Co.,* 363 U.S. 564, 568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960) ("Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator.... The courts, therefore, have no business weighing the merits of the grievance .... The processing of even frivolous claims may have therapeutic values of which those who are not a part of the plant environment may be quite unaware."); *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) (quoted at length in the original panel opinion); *Carey*

*v. Westinghouse Electric Corp.,* 375 U.S. 261, 272, 84 S.Ct. 401, 409, 11 L.Ed.2d 320 (1964) ("the possibility of conflict is no barrier to resort to [arbitration]"); *Boys Markets, Inc. v. Retail Clerks Union, Local 770,* 398 U.S. 235, 252, 90 S.Ct. 1583, 1593, 26 L.Ed.2d 199 (1970) ("we have frequently noted, in such cases as *Lincoln Mills,* the *Steelworkers Trilogy,* and *Lucas Flour,* the importance that Congress has attached generally to the voluntary settlement of labor disputes without resort to self-help and more particularly to arbitration as a means to this end. Indeed, it has been stated that *Lincoln Mills,* in its exposition of § 301(a), 'went a long way towards making arbitration the central institution in the administration of collective bargaining contracts.' ") (citation omitted); *Buffalo Forge Co. v. United Steelworkers,* 428 U.S. 397, 409, 96 S.Ct. 3141, 3148, 49 L.Ed.2d 1022 (1976) ("aside from the enforcement of the arbitration provisions of [collective-bargaining] contracts, ... the Court has never indicated that the courts may enjoin actual or threatened contract violations despite the Norris-Laguardia Act"); *W.R. Grace and Co. v. Local Union 759,* —— U.S. ——, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983) ("Because the authority of arbitrators is a subject of collective bargaining, just as is any other contractual provision, the scope of the arbitrator's authority is itself a question of contract interpretation that the parties have delegated to the arbitrator.... A federal court may not second-guess [an arbitrator's judgment with respect to his or her authority under the contract].").

The parties to the disputed collective bargaining agreement in this case have concededly agreed to binding arbitration, and the union has admittedly raised a grievance that is cognizable under the parties' agreement. Therefore, neither the protests of the covered employer about the inconvenience of arbitration, nor the pleas of non-signatory employers that they *might* be affected by the arbitral judgment, are reasons justifying an intrusion by a federal court to block arbitration in advance of its occurrence.

For all of the foregoing reasons, as well as those previously enumerated in the original panel opinion, appellees' petition for rehearing is denied.