**SAN FRANCISCO REAL ESTATE INVESTORS, Plaintiff, Appellant,**

v.

**REAL ESTATE INVESTMENT TRUST OF AMERICA, et al., Defendants, Appellees.**

**No. 82–1831.**

United States Court of Appeals, First Circuit.

Argued Nov. 9, 1982.

Decided Nov. 9, 1982.

court, which extends (from November 6, 1982 until November 18, 1982) the "proration date" connected to its tender offer for shares of Real Estate Investment Trust of America (REITA), the appellee. The "proration date" marks the end of the period during which a shareholder who subscribes to a tender offer for a fixed number of shares, is guaranteed that at least some of his shares will be purchased. If the offer is oversubscribed during that period, the offeror's purchase of a fixed number of shares is "prorated" equitably among all tendering shareholders. After that period, if the offer has not been fully subscribed, the offeror can buy shares on a "first come, first served" basis. Under the terms of the Williams Act, the offeror must choose a "proration date" at least ten days after the beginning of the offer. *See* 15 U.S.C. § 78n(d)(6).

SFREI's basic claim is that the district court was without legal basis to extend this date. We agree with SFREI that the district court's order is improper. We also agree that time is of the essence. We have therefore decided to vacate the order of the district court, effective immediately. We write this brief opinion to explain our reasons for doing so.

SFREI is a California business trust that invests in commercial real estate. On October 28, 1982, it made a public tender offer for the shares of REITA at a price of $40 per share. The terms of the offer made clear that SFREI would stand obliged to buy only 558,000 shares—enough, when added to its present holdings, to give it control. The offer was conditioned upon the tender of at least 149,000 shares. The offer also was conditioned upon SFREI's obtaining a preliminary injunction against the enforcement of a recently enacted REITA by-law that forbade any one shareholder from owning more than 9.8 percent of REITA's shares. The offer's "proration period" was to end on November 6, 1982, and the "withdrawal date"—the date prior to which any tendering shareholder was free to change his mind and withdraw—was to be Thursday, November 18. SFREI would

Jeffrey B. Rudman, with whom Earle C. Cooley, and Hale and Dorr, Boston, Mass., were on brief, for plaintiff, appellant.

Don M. Kennedy, with whom Paul F. Ware, Jr., Thomas J. Griffin, Jr., and Goodwin, Procter & Hoar, Boston, Mass., were on brief, for defendants, appellees.

Before COFFIN, Chief Judge, CAMPBELL and BREYER, Circuit Judges.

BREYER, Circuit Judge.

In this expedited appeal, San Francisco Real Estate Investors (SFREI), the appellant, challenges the validity of a temporary restraining order entered by the district

not actually buy any shares prior to November 19, 1982. There were other terms and conditions as well.

SFREI immediately initiated a civil action in the Massachusetts federal district court seeking to invalidate and enjoin the enforcement of REITA's "stock ownership" by-law. REITA counterclaimed, alleging a series of violations of the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq.,* and the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §§ 1961–68. The district court agreed to conduct a hearing on November 16 to consider the propriety of a preliminary injunction, as well as the validity of the contested by-law.

On November 4, REITA asked the district court to issue a temporary restraining order. It requested the court to order SFREI not to proceed with its tender offer until the court heard argument on November 16. It also asked the court to extend the offer's proration date and withdrawal date until after the November 16 hearing.

On November 5, the district court held a hearing on REITA's request. It denied most of the relief sought, but it ordered the proration date extended from November 6 to November 18. The court reasoned that REITA had shown some likelihood of success as to its by-law; it felt that REITA would be irreparably harmed were the relief not granted; and it concluded that REITA's shareholders should not be forced to tender or withdraw their shares without benefit of the court's "resolution of the underlying legal question." It added that its order would "preserve the status quo," and that without the proration date extension, the by-law would be nullified "as a practical matter."

SFREI immediately appealed and sought from this court a stay of the order pending appeal. The stay was denied, but we set the matter for argument and heard argument this morning.

*Appealability*

■ As counsel for SFREI concedes, temporary restraining orders are ordinarily not appealable on an interlocutory basis.

Under 28 U.S.C. § 1292(a)(1), courts of appeals have jurisdiction over interlocutory appeals from orders granting "injunctions," but the term "injunction" is understood not to encompass temporary restraining orders. *See Massachusetts Air Pollution and Noise Abatement Committee v. Brinegar,* 499 F.2d 125 (1st Cir.1974). However, the use of the "temporary restraining order" label by a district court does not defeat appealability if the order is in substance a preliminary injunction. *See Sampson v. Murray,* 415 U.S. 61, 86–88, 94 S.Ct. 937, 951–952, 39 L.Ed.2d 166 (1974); *Adams v. Vance,* 570 F.2d 950 (D.C.Cir.1978). When particular temporary restraining orders lack the features of short duration and *ex parte* presentation that are normally associated with them, courts have taken jurisdiction over appeals in appropriate circumstances. *See Sampson v. Murray,* 514 U.S. at 86–88 & n. 58, 94 S.Ct. at 951–952 & n. 58; *Massachusetts Air Pollution and Noise Abatement Committee v. Brinegar,* 499 F.2d at 126 (dictum); *ITT Lamp Division v. Minter,* 435 F.2d 989, 991 n. 2 (1st Cir.1970), *cert. denied,* 404 U.S. 874, 92 S.Ct. 27, 30 L.Ed.2d 120 (1971); *see also* Wright & Miller, *Federal Practice and Procedure* § 2962, at 619–21 (1973).

■ The present case presents several considerations that militate in favor of assuming jurisdiction. As the district court itself noted, both parties had notice of the application for a temporary restraining order, and both sides not only filed relatively extensive written memoranda but were given the opportunity to make oral presentations as well. In significant respects, the proceeding below thus came close to that ordinarily associated with an appealable preliminary injunction. Moreover, while the order is of brief duration, it extends beyond the ten-day period to which Fed.R. Civ.P. 65(b) limits temporary restraining orders. *See Pan American World Airways, Inc. v. Flight Engineers International Ass'n,* 306 F.2d 840 (2d Cir.1962). In addition, the harm both to SFREI and to those REITA shareholders who would have participated in a lawful tender offer may well

be irrevocable by the time the district court considers the validity of the by-law on November 16.

Finally, the district court itself initially characterized what it had done as the entry of a preliminary injunction. It apparently changed its characterization only because of its wish to emphasize that it had entered its order with a somewhat lesser degree of certainty than what it believed a preliminary injunction might have required. Under these circumstances, we believe it appropriate to treat the order as appealable.

*The Merits*

 When Congress enacted the Williams Act in 1968, it recognized that an offeror who hoped to gain control of a target firm might well rely on a "stampede" effect. The offeror would encourage shareholders to decide in its favor by offering a high price for only a portion of the outstanding shares and making that price available only to those who tendered quickly before the offer was oversubscribed. In fairness to all shareholders, Congress required that tender offers remain open to all for at least ten days, and that in the event shareholders tendered more shares than the offeror sought, the offeror would be obliged to take shares from each on a pro rata basis. *See* Securities and Exchange Act § 14(d)(6), 15 U.S.C. § 78n(d)(6). In establishing a minimum period of ten days, Congress sought to avoid giving undue weight to either the interests of the offeror or the interests of those shareholders who desired more time to consider the offer. Instead, it struck a compromise between those interests. Thus, the ten-day deadline of § 14(d)(6), while not necessarily immutable, is certainly entitled to respect from the courts, and should not be enlarged without significant reason.

 It is that significant reason that we find lacking here. Indeed, our basic problem with the district court's decision lies in our inability to see the connection between the potential unlawfulness that the district court feared and the relief that it ordered. In issuing its order, the district court found that REITA had "shown a reasonable likeli-hood of success on the merits" of its claim that the by-law was valid. (The court expressly declined to reach a decision about the merits of REITA's federal securities law claims.) Assuming, purely for the sake of argument, that the district court was correct and even that the by-law is valid, this fact does not suggest that the proration date should be extended. All shareholders were fully informed at the time SFREI made its public tender offer that REITA had a by-law which could, in effect, prohibit the acquisition. They were further informed that the by-law was being challenged in the Massachusetts federal district court. Indeed, they were told that the offer was *contingent* on the court preliminarily enjoining the enforcement of the by-law. In addition, every shareholder who tendered shares was explicitly allowed to withdraw those shares until November 18. Thus, every tendering shareholder would have available whatever information will be forthcoming on November 16 before making any irrevocable decision to tender any shares. We have been told nothing that suggests any unfairness to any of these tendering shareholders in retaining the November 6 proration date.

Neither do we see any unfairness to those who did not tender their shares by November 6. They were told, as were those shareholders who did tender, that they could do so without any appreciable risk, given the November 18 withdrawal date. The extension of the proration date until November 18 does help them, of course, for it gives them more time and more information with which to make up their minds. It does so, however, entirely at the expense of those who tendered their shares earlier. Those shareholders are injured to precisely the extent that the late deciders are helped. The only practical consequence of extending the proration date is to increase the size of the pool among which the purchase money must be divided in the event of oversubscription; insofar as latecomers are included, those who met the earlier deadline will receive less. We find nothing in the court's opinion or statements or the submissions of

the parties that explains why this is a desirable result. Nor do we find any explanation of why, if REITA's by-law *is* lawful and enforceable, nontendering shareholders should be given more time. Indeed, if any of REITA's substantive claims are assumed to have merit, we do not see in that fact any special reason why REITA's shareholders should be given a renewed opportunity to get in on a deal that is unlawful or impossible to consummate or both.

The district court's memorandum states that it sought to preserve the status quo and avoid irreparable harm. However, the temporary restraining order was neither necessary nor sufficient to serve either end. The order does not preserve the status quo; as indicated above, in the case of oversubscription—which is the only case in which the order matters—it simply takes money from those who tendered within the original time limit and gives it to those who tendered later. As for the threat of irreparable injury, the existence of the November 18 withdrawal date means that if the district court's decision on November 16 makes the tender offer look less attractive, those who tendered prior to November 6 could easily pull out. Under these circumstances, any "harm" caused by investor apprehension over the litigation would seem largely self-inflicted; it was not only not irreparable in the absence of the district court's order, but entirely avoidable.

The district court based its order in part on the conclusion that more complete information would be helpful to nontendering REITA shareholders. The court's reasoning proves too much, for more information is *always* helpful in tender offer battles. Congress drew the line between the interest in "more information" and the interests of the offeror in obtaining a quick decision when it established a minimal ten day proration period in the Williams Act. Unless there is some special circumstance related to the district court's determination of likely illegality, we see no basis for changing the time limit that Congress enacted. We have been informed of no such special circumstance here, and we find none.

For these reasons, we vacate the order of the district court. Our mandate will issue forthwith.

*Reversed.*