UNITED TRANSPORTATION UNION; Brotherhood of Locomotive Engineers; Brotherhood of Maintenance of Way Employees; Local No. 685 of the United Transportation Union; Gary Blakely; John H. Post; Timothy Pascoe; Joe Brand; Eugene Koppy; Mark Flanigan; R.L. Benson; W.S. Kendershott; G.D. Norskog; R.A. Benson; J.W. Benson; Jean Oines; J.H. Hiatt; Don E. Ray; Russell Saxbury; and Warren McGee, Plaintiffs,

v.

BURLINGTON NORTHERN RAILROAD COMPANY, Defendant.

No. CV 87–73–H–CCL.

United States District Court, D. Montana, Helena Division.

Oct. 29, 1987.

James H. Goetz, Brigitte M. Anderson, Goetz, Madden & Dunn, P.C., Bozeman, Mont., for plaintiffs.

Leo Berry, Jr., Helena, Mont., for defendant.

## MEMORANDUM AND ORDER

LOVELL, District Judge.

■ This motion for preliminary injunction concerns the apparently anomalous interplay between two federal statutes, the Railway Labor Act (RLA), 45 U.S.C. § 151 et seq., and the Interstate Commerce Act (ICA), 49 U.S.C. § 10101 et seq. Under the RLA, federal district courts have jurisdiction to grant injunctive relief to maintain the status quo when a carrier violates the procedures outlined for mediation and settlement of a "major dispute." *The Detroit and Toledo Shore Line Railroad Co. v. United Transportation Union,* 396 U.S. 142, 90 S.Ct. 294, 24 L.Ed.2d 325 (1969). On the other hand, jurisdiction to enjoin or modify an order of the Interstate Commerce Commission (ICC) pursuant to the ICA lies exclusively with the Circuit Courts of Appeals. 28 U.S.C. §§ 2321, 2342.

## BACKGROUND

On July 21, 1987, Burlington Northern Railroad Company (BN) entered into a preliminary agreement with Montana Rail Link (MRL), a new non-carrier entity, which would transfer approximately 830 miles of Montana trackage ("Southline") to MRL. MRL was required to obtain regulatory approval from the ICC pursuant to 49 U.S.C. § 10901(a) or to obtain an exemption pursuant to 49 U.S.C. § 10505 before it could begin operations on the trackage involved. The sale or transfer of trackage from a carrier to a non-carrier falls under § 10901(a).

Thereafter, on July 24, 1987, MRL filed a notice of exemption pursuant to § 10505. The ICC, after reviewing a petition seeking stay of the effective date of the exemption filed by the Transportation Division of the Department of Commerce, State of Montana, and the Montana Public Service Commission, issued the exemption on July 31, 1987. Finance Docket No. 31089, Decided July 31, 1987, *Montana Rail Link, Inc.— Exemption Acquisition and Operation— Certain Lines of the Burlington Northern Railroad Company.*

As permitted under ICC procedures, several parties have filed petitions to revoke the exemption authorizing the sale. The ICC has not yet issued a final ruling on these petitions.

Plaintiffs filed the complaint in this action on July 29, 1987, asking for declaratory judgment and injunctive relief on five counts. On October 13, 1987, Plaintiffs filed the motion presently before the court seeking preliminary injunction. The court interrupted a jury calendar and conducted an expedited hearing October 20, 1987. At the conclusion of the hearing, BN agreed to delay consummation of the sale until October 31, 1987, to allow the court time to fully consider this motion.

On October 16, 1987, several parties filed an emergency motion with the Court of Appeals for the Ninth Circuit under Circuit Rule 27–3 for writ of mandamus or other appropriate writ and motion for preliminary injunction pursuant to 28 U.S.C. § 1651(a).[1] This motion asks the Court of Appeals to enjoin the sale because if not enjoined, the transaction will be consummated with no ICC review, resulting in irreparable injury to the BN employees.

On October 21 the ICC issued an order setting a hearing for November 5, 1987, in Missoula, Montana, in order to generate a complete record and to give any interested person the opportunity to make comments. Evidently, after this hearing the Commission will issue a decision on the revocation petitions presently before it. Finance

Docket No. 31089, Decided October 21, 1987.

## DISCUSSION

Plaintiffs claim that Defendant violated the RLA when it refused to negotiate an agreement which would govern the manner in which BN employees would be affected by the pending sale. Plaintiffs allege that BN's failure to confer, and to negotiate an agreement with the United Transportation Union (UTU), the Brotherhood of Locomotive Engineers (BLE), and the Brotherhood of Maintenance of Way Employees (BMWE) violates its duty to bargain in good faith and that its actions in refusing to bargain and in changing the conditions of employment of its employees working on the "Southline" comprise a major dispute under 45 U.S.C. § 2, Seventh.

■ Plaintiffs maintain that the proposed sale will require a change in the collective bargaining agreements because of the large number of jobs which will be affected and the resulting major changes in working conditions. Disagreements concerning changes in a collective bargaining agreement are deemed "major disputes" within the coverage of procedures set out in Section 6 of the RLA. *Elgin, Joliet & Eastern Railway Company v. Burley*, 325 U.S. 711, 723, 65 S.Ct. 1282, 1289, 89 L.Ed. 1886 (1945).

■ When a "major dispute" is involved, the federal district court has jurisdiction to enjoin the carrier from altering the status quo until mediation and arbitration procedures under the RLA have been exhausted. *Virginian Railway Co. v. System Federation No. 40*, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937). The status quo which must be maintained is "the actual working conditions out of which the dispute arose, irrespective of whether these conditions are covered in an existing agreement." *Shore Line*, 396 U.S. at 143, 90 S.Ct. 295. The consummation of the sale of the "Southline" would alter the status quo.

---

**1.** *Citizens Alliance to save the Southline and Railway Labor Executives Association, Petitioners v. Interstate Commerce Commission, Respon-* *dent and Burlington Northern Railroad Company and Montana Rail Link, Inc., Real Parties in Interest,* No. 87–7465.

BN argues that the proposed sale of the "Southline" does not affect the "rates of pay, rules or working conditions" of the BN employees and is not, therefore, a major dispute. BN also argues that the proposed sale falls under the prerogative of management and is not an area which must be negotiated with the unions.

■ Once jurisdiction over the Plaintiffs' claims pursuant to the RLA is found to exist, the district court must look to the remedy it can provide. The remedy sought by Plaintiffs is an injunction of the proposed sale until an agreement between the unions and BN is negotiated or the dispute goes to arbitration and is settled. It is in implementing this remedy that the orders and jurisdiction of the ICC must be considered.

■ The ICC's order of July 31, 1987, granting MRL an exemption pursuant to 49 U.S.C. § 10505, authorizes consummation of the proposed sale. Any injunction issued by the district court would directly interfere with the ICC order.

Plaintiffs argue that this court may proceed with the remedy provided under the RLA because sections 10505 and 10901(a) of the ICA do not supersede the provisions of the RLA. Plaintiffs base their argument on the comparison of two subchapters of the ICA. The subchapter dealing with mergers and consolidations, 49 U.S.C. § 11341 et seq., contains express language indicating that carriers involved in transactions under that subchapter are exempt from all other federal law. The subchapter including sections 10505 and 10901 contains no language regarding exemption from any other federal law. The Second Circuit's opinion in *Railway Labor Executive's Association v. Staten Island Railroad Corp.*, 792 F.2d 7 (2d Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 927, 93 L.Ed.2d 978 (1987), is squarely on point and considers the interaction between sections of the ICA and the RLA comparable to those in the instant case.

In *Staten Island,* the union, representing the employees of the railroad, filed suit in federal district court to enjoin a sale of portions of the rail system for failure of the carrier to negotiate under a Section 6 Notice. The ICC had authorized the sale pursuant to 49 U.S.C. §§ 10901 and 10905. The federal district court dismissed the claim for lack of subject matter jurisdiction and the union appealed.

On appeal, the Second Circuit found that the district court did have jurisdiction over the claim pursuant to the RLA but was not able to provide a remedy. "If the district court were to require a return to the pre-sale status quo at this point, it nonetheless would be required to modify the ICC's directive giving SIRC and SIRY immediate authorization to consummate the sale. Such a remedy is unavailable in the district court." *Id.* at 12.[2]

Plaintiffs incorrectly attempt to distinguish this case as one falling under the express preemption language of section 11341. The transactions involved in *Staten Island* come under sections 10901, 10903, and 10905 of the ICA. I agree with this interpretation of the statutes and find no persuasive authority to the contrary.[3] This

---

**2.** In another case pending in this court concerning some of the same plaintiffs and the same transaction, a motion for remand was denied becuase the complaint raised a substantial federal question, *i.e.,* whether proceedings before the ICC may be enjoined because of a state law violation. The court noted that the remedy sought in state court, injunction of the proposed sale, is completely controlled by federal law and within the jurisdiction of the ICC. *Citizens Alliance to Save the Southline v. Montana Rail Link, Inc.,* 672 F.Supp. 1576.

**3.** Both parties have brought to the attention of the court an opinion handed down by the Court of Appeals for the Third Circuit on October 26,

1987, where the court reversed a district court decision enjoining a labor strike. The Third Circuit found that Section 4 of the Norris–LaGuardia Act need not be accommodated to the Interstate Commerce Act. *Railway Labor Executives' Association v. Pittsburgh & Lake Erie R.R. Co.,* 831 F.2d 1231 (3d Cir.1987).

The case involved facts very similar to those in the instant case. The Railroad was selling its rail lines to a new non-carrier entity which filed for, and received, an exemption pursuant to section 10505 of the ICA. The union filed section 6 notices pursuant to the RLA and the railroad refused to negotiate. However, there the union chose to strike. Section 4 of the Norris–LaGuardia Act forbids federal district

reading of the law is buttressed by the recent case of *G & T Terminal Packaging Co. Inc. v. Consolidated Rail Corp.*, 830 F.2d 1230 (3d Cir.1987).

Therefore, although this court has jurisdiction to hear Plaintiffs' motion for preliminary injunction, Congress has afforded no remedy for the court to apply.

## CONCLUSION

For these reasons, Plaintiff's motion for preliminary injunction is denied, and counts I and V of the complaint are dismissed under Rule 12(b)(6).

The clerk is directed forthwith to notify counsel of entry of this order.

court injunctions against labor strikes. 29 U.S.C. § 104.
A strike by union members against their employer does not directly contradict or encroach upon the authority of the ICC. The authorization of the sale still stands, and at the same time the employees have the right to pressure the employer to negotiate labor protections. The case is distinguishable in that an injunction of the sale itself would directly contradict and infringe upon the authority of the ICC. Congress has given full authority over sales and acquisitions of railroads to the ICC pursuant to the ICA.