# Litigating Authority of the Interstate Commerce Commission

The Interstate Commerce Commission lacks authority to intervene in the court of appeals in litigation between a railroad and its employees under the Railway Labor Act, or to file an amicus brief in the case, without the approval of the Attorney General.

The Interstate Commerce Commission also lacks authority to file a petition for certiorari, absent authorization from the Solicitor General.

June 10, 1988

MEMORANDUM OPINION FOR THE SOLICITOR GENERAL

You have asked for the opinion of this Office on several issues relating to the litigating authority of the Interstate Commerce Commission ("ICC"). You wish to know whether the ICC had authority to intervene in the court of appeals in *Pittsburgh & Lake Erie R.R. v. Railway Labor Executives Ass'n*, No. 87–1589 (S. Ct.)* without the Department's approval, and whether the ICC was authorized to file an amicus brief in an earlier phase of this case, also in the court of appeals. A related issue arises from the ICC's assertion of authority to file a petition for certiorari in the Supreme Court in this case, independent of and without the approval of the Department of Justice.

For reasons set forth more fully below, we believe that the ICC had no authority to intervene in the court of appeals in this case independent of the Department of Justice, or to file an amicus brief. Under the circumstances of this case, the only means properly available to the ICC for making its views known in the court of appeals was through an appearance by the Attorney General. Moreover, the ICC has no authority in this case, absent authorization from the Solicitor General, to file a petition for a writ of certiorari, or to make an appearance in any form, in the Supreme Court.

## Background

The facts and legal issues involved in this litigation are described in detail in the two decisions of the Third Circuit. *See Railway Labor Executives Ass'n v. Pittsburgh & Lake Erie R.R.*, 831 F.2d 1231 (3d Cir. 1987); 845 F.2d 420 (3d Cir. 1988). Briefly, it involves a dispute over whether a railroad has an obligation under the Railway Labor Act ("RLA") to bargain with its employees over the effect of a sale of rail assets, where the sale has been approved by the ICC

---

* After this opinion was written, the Supreme Court granted certiorari, 488 U.S 965 (1988), and thereafter vacated the judgment, 491 U.S. 490 (1989).

under the Interstate Commerce Act ("ICA"). The rail unions take the position, with which the court of appeals agreed, that the railroad must comply with the collective bargaining requirements of the RLA in connection with the proposed sale, even if, as a practical matter, compliance with those requirements will delay and may even frustrate the sale entirely. The railroad, supported by the ICC, argues that the ICC has plenary and exclusive jurisdiction over all aspects of the sale, and that the provisions of other laws must give way to the extent necessary to consummate it. The ICC's position is that the ICA preempts the Norris-La-Guardia Act and the collective bargaining provisions of the RLA. The facts of the case are these. In the summer of 1987, Pittsburgh & Lake Erie R.R. ("P & LE") entered into an agreement to sell its rail assets to Railco, a newly formed non-carrier subsidiary of the Chicago West Pullman Corporation. Informed of the proposed sale, P & LE's unions demanded that the railroad bargain over its effect on the railroad's employees, pursuant to the requirements of the RLA.

P & LE refused, and the Railway Labor Executives Association ("RLEA") filed suit in district court to enforce the employees' bargaining rights under the RLA.[1] Several weeks later, on September 15, 1987, P & LE's employees went on strike. On September 19, Railco filed a "notice of exemption" with the ICC, seeking an exemption from the otherwise applicable requirement of ICC approval for the sale. The ICC validated the effectiveness of the acquisition by denying RLEA's request to refuse or stay the exemption. The sale became effective on September 26.[2] In the meantime, P & LE had asked the district court to enjoin its employees' strike, on grounds that it was an illegal attempt to interfere with the ICC's exclusive jurisdiction over the sale. In the wake of the ICC's refusal to stay its exemption, the district court issued an injunction, on the grounds advanced by P & LE. The Third Circuit summarily reversed, holding that section 4 of the Norris-LaGuardia Act deprived the district court of jurisdiction to issue the injunction. It remanded for a determination whether the ICA operated to relieve P & LE of its obligation to comply with the RLA bargaining procedures ("*P & LE-I*"). P & LE sought certiorari in March of this year. On remand, the district court held that P & LE was obligated to bargain, and the Third Circuit affirmed ("*P & LE-II*"). P & LE filed a second petition for certiorari on May 17, 1988.

---

[1] RLEA sought a declaration that the provisions of the RLA were applicable to this transaction, a declaration that the sale could not be consummated until all RLA dispute resolution procedures had been exhausted, and an injunction prohibiting P & LE from completing the transaction until that time. *See* 831 F.2d at 1233.

[2] The Railroad Revitalization and Regulatory Reform Act of 1976, Pub L. No. 94–210, 90 Stat. 31, and the Staggers Rail Act of 1980, Pub. L. No. 96–448, 94 Stat 1895, reduced the amount of federal involvement in rail mergers and acquisitions, in an effort to implement a congressional policy favoring expedited approval of sales of railroads, particularly those that are failing. *See* H.R. Conf. Rep No. 1430, 96th Cong., 2d Sess (1980). It broadened the power of the ICC to approve various transactions, including acquisitions, involving rail carriers. When an acquisition involves two existing rail carriers, the ICC must impose certain labor protective conditions. 49 U.S.C. § 11347 However, where a rail carrier's assets are being acquired by a non-carrier, the imposition of labor protective provisions is discretionary *See* 49 U.S C. § 10901 In 1985, the ICC exempted from regulation the entire class of acquisitions of railroad lines by non-carriers. *See Ex Parte 392 (Sub. No 1), Class Exemption for the Acquisition and Operation of Rail Lines Under 49 U.S.C. 10901*, 1 I.C.C.2d 810 (1985), *review denied mem. sub nom Illinois Commerce Comm'n v ICC*, 817 F.2d 145 (D.C. Cir. 1987). Such acquisitions are effective seven days after the seller files a "notice of exemption," unless the ICC acts to refuse or stay the transaction No labor protective conditions are generally imposed on a sale in such cases, *see* 1 I C.C.2d at 815, and none were imposed in this case.

111

The ICC entered an appearance in the court of appeals in both *P & LE-I* and *P & LE-II*. In *P & LE-I* the ICC filed an amicus brief supporting the position of P & LE, after having been denied intervenor status. The ICC sought and was granted intervenor status in *P & LE-II*. It is our understanding that in neither instance did the ICC ask the Department of Justice to take any action in its behalf. As matters now stand, the ICC has asked that the Department of Justice join it in seeking certiorari in *P & LE-II*, but has also asserted a right to petition the Supreme Court independently if the Department declines to do so. *See* Memorandum for the Solicitor General, from Robert S. Burk, General Counsel, ICC (May 23, 1988).

*I. The ICC's Authority to Intervene or Appear as Amicus Curiae in the Court of Appeals*

We start with the premise, as to which there appears to be no disagreement in this situation, that the ICC could not appear in district court or the court of appeals in its own name, either as intervenor or amicus curiae, absent statutory authorization. This is because the Attorney General has plenary authority and responsibility for all litigation in which the United States or one of its agencies is a party or is interested, "[e]xcept as otherwise authorized by law." *See* 28 U.S.C. §§ 516, 519. *See generally The Attorney General's Role as Chief Litigator for the United States*, 6 Op. O.L.C. 47 (1982). In addition, it has been the consistent position of this Department that, where Congress has not given an agency authority to litigate through its own attorneys, the Attorney General may not transfer or delegate to it his own litigating power. While attorneys employed by agencies that have no independent authority to conduct litigation may assist Department of Justice attorneys, their role is restricted to so-called "agency counsel" functions. *See Representation of the United States Sentencing Commission in Litigation*, 12 Op. O.L.C. 18, 20 (1988). In a few words, sections 516 and 519 require that, absent statutory direction to the contrary, attorneys of the Department of Justice under the direction of the Attorney General represent an agency of the United States in court.

Amicus participation in a case requires the same clear and specific statutory exception to sections 516 and 519 as does appearance as a party in litigation.[3]

---

[3] *See* Memorandum for the Attorney General, from Theodore B Olson, Assistant Attorney General, Office of Legal Counsel, *Re: Authority of the Equal Employment Opportunity Commission to Participate as Amicus Curiae in Williams v. City of New Orleans* (Mar. 24, 1983); Memorandum for J. Paul McGrath, Assistant Attorney General, Civil Division, from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel, *Re Amicus Curiae Role of the Small Business Administration's Chief Counsel for Advocacy under the Regulatory Flexibility Act* (May 17, 1983). In the highly limited and distinguishable circumstance of litigation challenging its sentencing guidelines, we did not move to strike the separate views of the United States Sentencing Commission, with respect to fundamental questions pertaining to its very existence and authority within the constitutional structure. Most importantly, in the Sentencing Commission litigation the Department never relinquished in any manner the representation of the interests of the United States, including those of the Sentencing Commission as a party defendant. *See* 12 Op. O.L.C. at 24–25. Again, no similar compelling considerations relating to the ICC's very existence are presented by the instant litigation, and the ICC's independent participation in the lower courts obviously thwarted the Department's control over representation affecting the interests of the United States.

112

We do not understand the ICC to dispute these basic principles of representation. Rather, the ICC contends that both its amicus appearance in *P & LE-I* and its intervention in *P & LE-II* were authorized by statute. Specifically, the ICC relies upon 28 U.S.C. § 2323 for its authority both to intervene and to appear as amicus in this litigation.[4] Section 2323 provides, inter alia, that the Attorney General shall represent the government in "actions specified in section 2321 of this title" and in certain other enforcement actions. It also provides that the ICC itself, and any party in interest to a proceeding before the ICC in which an order is made, may appear as parties "in any action involving the validity" of that order. Because section 2323 is central to the ICC's argument, we reprint it in full in the margin.[5] The ICC takes the position that the authority given it under the second paragraph of section 2323 authorizes it to intervene or appear as amicus not only in enforcement actions originated by the Attorney General under the first paragraph of this section, but also in any other action in which the "validity" of a Commission order is arguably drawn into question, whether or not the United States is a party.[6]

We disagree. The language of section 2323 on which the ICC relies admits of the proffered construction only if read entirely in isolation. When viewed in the context of the section as a whole, and the scheme of two preceding statutory provisions, it is clear that the intervention authority given the ICC in the second paragraph of section 2323 is confined to the enforcement actions brought by the Attorney General under the first paragraph of that section.

---

[4] *See* Mr. Burk's May 23 memorandum at 4 In an earlier memorandum dealing with essentially this same issue in another case, Mr Burk appears also to rely on the provision of the ICA that authorizes the ICC to employ attorneys "to represent the Commission in any case in court." 49 U.S C. § 10301(f)(1). *See* Memorandum for the Solicitor General, from Robert S. Burk, General Counsel, ICC, at 6–11 (Apr. 13, 1988), discussing the ICC's authority to file an amicus brief in *Deford v Soo Line R R.*, 867 F.2d 1080 (8th Cir ), *cert. denied*, 492 U.S. 927 (1989). Such general provisions have never been understood in and of themselves to constitute grants of litigating authority to an agency Rather, they simply provide for the employment of attorney personnel to carry out an agency's otherwise authorized litigating functions

[5] Section 2323 provides in full as follows:

 The Attorney General shall represent the Government in the actions specified in section 2321 of this title and in enforcement actions and actions to collect civil penalties under subtitle IV of title 49.

 The Interstate Commerce Commission and any party or parties in interest to the proceeding before the Commission, in which an order or requirement is made, may appear as parties of their own motion and as of right, and be represented by their counsel, in any action involving the validity of such order or requirement or any part thereof, and the interest of such party.

 Communities, associations, corporations, firms, and individuals interested in the controversy or question before the Commission, or in any action commenced under the aforesaid sections may intervene in said action at any time after commencement thereof

 The Attorney General shall not dispose of or discontinue said action or proceeding over the objection of such party or intervenor, who may prosecute, defend, or continue said action or proceeding unaffected by the action or nonaction of the Attorney General therein

[6] The ICC argues that the RLEA's action constitutes a "collateral attack[]" on its exemption order in this case, suggesting that it would limit its assertion of authority to intervene under section 2323 to cases whose result potentially would render an ICC order invalid or ineffective. *See* Mr Burk's May 23 memorandum at 4. *See also* Mr. Burk's April 13, 1988 memorandum on the *Deford* case at 6–11. But no such limiting principle is embodied in the broad language ("any action involving the validity") of the second paragraph of section 2323. Moreover, we note the court of appeals' rejection of the ICC's argument that the RLEA's suit constituted "a forbidden collateral attack on the ICC's order approving the sale transaction." 845 F.2d at 437. *See also id.* at 438 ("We do not view a judicially-enforced delay as an attack on the ICC's order.")

113

Looking first at section 2323 alone, it seems clear that its several paragraphs were intended to be read together, and understood to cover the same universe of court proceedings. Indeed, its separate paragraphs are not even demarcated as separate subsections. This textually evident construction of section 2323 is supported by sections 2321 and 2322, the provisions which, along with section 2323, constitute chapter 157 of title 28, entitled "Interstate Commerce Commission Orders; Enforcement and Review." Section 2321 describes the procedures for judicial review of ICC orders: actions by private parties to enjoin or suspend an order are to be brought in the court of appeals, in accordance with chapter 158 (the Hobbs Act); actions to enforce ICC orders other than for the payment of money or the collection of fines, are to be brought in district court "as provided in this chapter." 28 U.S.C. § 2321(b). Section 2322 provides that all actions specified in section 2321 shall be brought "by or against the United States." Reading all three provisions of chapter 157 together confirms that the second paragraph of section 2323 was intended to give the ICC authority only in the actions that are described in and governed by its first paragraph.

The legislative history of section 2323 bears out this interpretation. Originally enacted in 1910, *see* 36 Stat. 539, 543, its very purpose was to give the Attorney General control over litigation under the ICA that had previously been conducted wholly by the ICC through its own attorneys. *See* H.R. Rep. No. 923, 61st Cong., 2d Sess. 3 (1910). At the same time, the ICA was amended to delete the authority for the ICC to apply "in its own name" for enforcement of its orders. The ICC's entitlement to intervene in an action brought by the Attorney General was relegated to a proviso following the description of the Attorney General's primary role. The caselaw interpreting the ICC's power to litigate under section 2323 confirms that it is activated in the enforcement context only after the Attorney General himself has initiated the enforcement action. *See ICC v. Southern Ry. Co.*, 543 F.2d 534 (5th Cir. 1976), *aff'd*, 551 F.2d 95 (5th Cir. 1977) (en banc).[7]

In summary, we believe that the ICC's power under the second paragraph of section 2323 to intervene or appear as amicus curiae in litigation is limited to those enforcement actions brought by the Attorney General under its first paragraph. This means that the ICC is without authority to become directly involved in litigation between two private parties over the effect of one of its orders, even

---

[7] The ICC suggests its doubt as to the continuing validity of the Fifth Circuit's decision in the *Southern Railway* case, citing the Seventh Circuit's decision in *Carothers v. Western Transp. Co*, 563 F.2d 311, 313 (7th Cir. 1977). Whatever the merits of that doubt, it is inapposite to this case. *Carothers* dealt with the ability of a private party to initiate an action against another private party to enforce an ICC order under 49 U.S.C. § 16(12)(1976), and the court's statement respecting the ICC's authority was thus dictum. (The authority of a private party to bring an enforcement action is now separately codified at 49 U.S.C. § 11705.) The *Carothers* court simply held that the United States was not an indispensable party to a private action to enforce an ICC order under section 16(12), and did not question the Attorney General's authority to initiate a suit brought by the government under section 2323. The ICC apparently recognizes that its title 49 authority, now codified in section 11702, has no applicability in this situation, since that section plainly deals only with actions to enjoin statutory violations or to enforce Commission orders. There is thus no occasion for revisiting the question decided in the *Southern Railway* case against the ICC, whether the ICC's title 49 authority repeals sections 2321–2323 by implication. *See* 543 F.2d at 539.

if the result of this litigation could effectively reverse or render invalid the order.[8] This Department cannot remedy an agency's lack of litigating authority by delegating its own power to intervene in an action in the name of the United States. Thus the ICC would have had no authority to intervene or file an amicus brief in the court of appeals in this litigation even if this Department had agreed to permit it to do so.[9]

## II. ICC Authority to Appear in the Supreme Court

In his memorandum of May 23, 1988, the General Counsel of the ICC takes the position that his agency has authority in this case to seek a writ of certiorari from the Supreme Court without this Department's authorization. Again, we disagree.

Section 518(a) of title 28 gives the Attorney General exclusive power to represent the interests of the United States and its agencies in the Supreme Court, whether or not Congress has given an agency authority to litigate in the lower courts. Section 518(a) provides that the Attorney General and the Solicitor General shall conduct and argue all suits and appeals in the Supreme Court, "[e]xcept when the Attorney General in a particular case directs otherwise."

In allowing the Attorney General to "direct[] otherwise," section 518 does not appear to compel the same exclusivity of representation in the Supreme Court that sections 516 and 519 require for lower court litigation. And on occasion the Attorney General has elected, in the exercise of his discretionary authority under section 518(a), to permit an agency to file a brief in the Supreme Court in its own name, rather than having the Solicitor General represent it. But the existence of the discretionary authority to allow exceptions simply underscores the firmness of the otherwise applicable rule of exclusivity.[10]

In asserting the ICC's right to appear in the Supreme Court in this case without the authorization of the Attorney General, the ICC General Counsel cites as authority 28 U.S.C. § 2350. But this provision on its face is applicable only to

---

[8] The ICC may litigate entirely independent of any action by this Department only in proceedings initiated by a private party to enjoin or suspend its rules or orders See 28 U S C § 2348. In these Hobbs Act cases, the ICC (like the several other regulatory agencies subject to its provisions) is entitled to participate in its own name, without regard to whether the Department decides to participate in the matter. The Attorney General of course remains responsible for and controls the interests of the United States in Hobbs Act cases Id

[9] In a memorandum discussing the ICC's ability to intervene in the *Deford* case, *see supra* note 4, the Civil Division reached the same conclusion respecting the scope of the ICC's litigating authority under 28 U.S C § 2323. *See* Memorandum for the Solicitor General, from Richard K Willard, Assistant Attorney General, Civil Division (Feb. 18, 1988). Our only apparent difference with the Civil Division is that we do not believe that the ICC's lack of independent statutory litigation authority in the lower federal courts can be supplied simply by this Department giving its consent. Rather, its attorneys may appear in court or otherwise carry out duties reserved to "officers of the Department of Justice" under section 516 only if they are given special appointments in the Department of Justice. *See* 12 Op. O.L.C at 20

[10] Just this Term the Supreme Court reaffirmed the power of the Attorney General and the Solicitor General over all Supreme Court litigation. *See United States v Providence Journal Co.*, 485 U.S. 693 (1988)

115

proceedings under the Hobbs Act for the review of agency orders.[11] Assuming arguendo that section 2350 does give the ICC, and the other agencies whose orders are subject to review under the Hobbs Act, independent authority to file a petition for a writ of certiorari in the Supreme Court in Hobbs Act cases,[12] it plainly does not constitute a general authorization for these agencies to appear in the Supreme Court in any case that they believe affects their interests. Thus, entirely without regard to the merits of the ICC's argument that its intervention in this case was authorized under 28 U.S.C. § 2323, section 2350 would certainly not overcome the rule of exclusivity imposed by section 518(a) in a non-Hobbs Act case.

## CONCLUSION

In summary, we conclude that the ICC was not authorized to file an amicus brief in *P & LE-I* or to intervene in *P & LE-II*. Nor is the ICC authorized to seek a writ of certiorari or otherwise appear in the Supreme Court in either case, without the permission of the Attorney General.

DOUGLAS W. KMIEC
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[11] Section 2350 applies only to orders granting or denying an injunction under section 2349(b), or a final judgment of the court of appeals "under this chapter." The "chapter" in question is chapter 158 of title 28, 28 U.S.C §§ 2341–2351.

[12] It is not entirely clear to us that the general language of section 2350 was intended to have the effect of repealing section 518(a), even in the Hobbs Act cases to which it applies. We note in this regard that the Fifth Circuit in *Southern Railway* rejected an argument that similar disjunctive wording in 49 U.S.C. § 16(12) (1976) had the effect of repealing the otherwise applicable requirement of 28 U S C. § 2323 that the Attorney General rather than the ICC initiate an action to enforce an ICC order. *See* 543 F.2d at 538–39.